UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MR. and MRS. B., Parents of T.B., Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 3:06-cv-00217 (VLB) |
| NEWTOWN BOARD OF EDUCATION, Defendant. | : | March 20, 2008 |

**MEMORANDUM OF DECISION ON MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [Docs. #25, 34]**

Before the Court is an action analogous to an administrative appeal. The plaintiffs, Mr. and Mrs. B., parents of T.B. ("parents"), challenge the decision of the Connecticut Department of Education denying their claim to reimbursement for the cost of T.B.'s private school education. The parents filed this action against the defendant, the Newtown Board of Education ("board"), pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The parents contend that the board improperly determined that T.B. was ineligible for special education and that the board should have reimbursed them for T.B.'s private schooling. A hearing officer for the Connecticut Department of Education rejected the parents' arguments, and the parents now claim that the hearing officer made erroneous factual findings and misapplied the law. The parents and the board have both filed motions for judgment on the administrative record. For the reasons given below, the parents' motion is DENIED and the board's motion is GRANTED.

The following facts, as found by the hearing officer, are relevant to the parties' motions for judgment. The parents home-schooled T.B. through the end of T.B.'s eighth grade year in 2003. Believing T.B. had a learning disability, the parents asked a school psychologist to evaluate T.B. The psychologist made several recommendations regarding the optimal learning environment for T.B., including small group instruction, extra time on tests, and frequent review and repetition.

In May 2003, the parents asked the board to arrange a planning and placement team (PPT) meeting to develop an educational program for T.B. to begin in September 2003 at the board's high school. The PPT meeting was held on June 13, 2003 and then was continued to July 15, 2003, at which time the board recommended that T.B. receive extra reading and writing instruction at the high school. The board planned to test T.B. in September 2003 and also proposed to reevaluate T.B. after determining whether the extra instruction was effective.

On August 25, 2003, the parents informed the board that they had decided to place T.B. at Trinity Pawling, a private school in New York. Trinity Pawling offers an educational program featuring evening availability of teachers, extra time on tests, and assignments that take each student's learning needs into account. The parents nonetheless followed through with the board's testing of T.B., but they rescheduled it from September to November 2003. The testing revealed that although T.B.'s scores were in the average range, T.B. would

benefit from extra time on assignments and access to a spell checker. The PPT meeting resumed on January 16, 2004 and then was continued to January 30, 2004, in order to allow time for the team to review records of T.B.'s progress at Trinity Pawling. After reviewing the records, the board determined that T.B. was ineligible for special education because T.B.'s record at Trinity Pawling showed that T.B. had responded well to the type of instruction that the board had recommended T.B. receive at the board's high school.

The parents disagreed with the board's determination and scheduled a further evaluation of T.B. by Robert Kruger, a psychologist, in summer 2004. The PPT meeting resumed on May 20, 2005, in order to review Kruger's evaluation and T.B.'s two full years of work at Trinity Pawling. The board again found that T.B. was ineligible for special education because of the progress that T.B. had achieved through exposure to the type of instruction that the board recommended T.B. receive at the board's high school.

The parents thereafter requested a due process hearing from the Connecticut Department of Education. The hearing was held over four days in September and October 2005 and included testimony by Mrs. B.; Kruger; Michael Regan, the board's director of pupil services; and Gregory Carpiniello, the dean of residential life at Trinity Pawling. The hearing officer issued her decision on December 28, 2005, finding in favor of the board on all of the issues. The parents then filed this action.

**The Court sets forth the standard of review that applies to this case. "In reviewing the administrative proceedings, it is critical to recall that IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy. . . . Although the district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence, the Supreme Court has cautioned that such review is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. . . . [W]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Cerra v. Pawling Central School Dist., 427 F.3d 186, 191-92 (2d Cir. 2005).**

**"To determine whether parents who sue under IDEA to challenge a proposed [individualized education program (IEP)] are entitled to private school tuition reimbursement, [the Court] engage[s] in a three step process. The first two steps focus on whether the proposed IEP was inadequate to afford the child an appropriate public education. . . . First, [the Court] examine[s] whether the state has complied with the procedures set forth in the IDEA. . . . Second, [the Court] consider[s] whether the IEP developed through the [IDEA's] procedures [is] reasonably calculated to enable the child to receive educational benefits. . . . If these requirements are met, the State has complied with the obligations**

**imposed by Congress and the courts can require no more. . . . If, however, the IEP is procedurally or substantively deficient, [the Court] proceed[s] to the third step and ask[s] whether the private schooling obtained by the parents is appropriate to the child's needs." Id. at 192.**

**The parents first claim that the board failed to comply with the procedures set forth in the IDEA because the board improperly (1) relied on Regan as its only witness in presenting its case at the hearing; (2) delayed the PPT meetings and T.B.'s evaluation process, thereby failing to have an IEP in place by the first day of school in September 2003; (3) combined the minutes from the two PPT meetings in January 2004 into the IEP; and (4) did not observe T.B. in a classroom setting.**

**As to the board's alleged reliance on Regan as its sole witness, the plaintiff cites and this Court has found no authority supporting the proposition that the Court has the power to prescribe the manner in which a party must present its case. Whether the board decided to call one witness or ten is not significant; it is the quality and not the quantity of evidence that matters. It is the duty of the hearing officer as the trier of fact to consider the evidence presented by both parties and to weigh it in order to reach a finding. The parents essentially argue that the hearing officer should have assigned more weight to the testimony of Mrs. B. and Kruger than to Regan. However, "a hearing officer has discretion to weigh the conflicting testimony of the parties' respective witnesses." B.L. v. New Britain Board of Education, 394 F. Supp. 2d 522, 537 (D. Conn. 2005). The Court**

**may not "[choose] between the views of conflicting experts on a controversial issue of educational policy . . . in direct contradiction of the opinions of state administrative officers who had heard the same evidence." Grim v. Rhinebeck Central School Dist., 346 F.3d 377, 383 (2d Cir. 2003).**

**As to the board's alleged delay and failure to finish the IEP by the first day of school in September 2003, the hearing officer found that the parents had first requested a PPT meeting in May 2003. An IEP must be in place within 45 school days pursuant to Conn. Agencies Regs. §§ 10-76d-13(a)(1) & 10-76a-1(5). It is undisputed that there were not 45 school days between the parents' request and the first day of school in September 2003. Furthermore, the board did not have an opportunity to finish evaluating T.B. in a timely manner because the parents decided to enroll T.B. at Trinity Pawling in August 2003 and rescheduled the board's testing of T.B. from September to November 2003. The board's inability to complete the IEP by the first day of school in September 2003 was not procedurally deficient.**

**As to the board's combination of the minutes from the two PPT meetings in January 2004 into the IEP, the parents cite no authority that the board's action could constitute a procedural deficiency. Similarly, the parents cite no authority that the board's failure to observe T.B. in a classroom setting could constitute a procedural deficiency. As the hearing officer explained, the board's failure could not be viewed as harmful error because Trinity Pawling staff had contributed to the PPT meetings, and the board therefore had access to information about T.B.'s**

performance in a classroom. The parents have not demonstrated that the board committed any procedural deficiencies.

The Court next turns to the substantive adequacy of the IEP, that is, whether it was reasonably calculated to enable T.B. to receive educational benefits. "The IDEA . . . does not require a school district to pay for a private school education simply because that opportunity would be ideal for the student. It requires only that a school board provide each student . . . a basic opportunity to receive an educational benefit." A.E. v. Westport Board of Education, 463 F. Supp. 2d 208, 221 (D. Conn. 2006). "A school district will fulfill its substantive obligations under the IDEA if the student is likely to make progress, not regress, under his IEP, and if the IEP affords the student with an opportunity greater than mere trivial advancement." Cerra, 427 F.3d at 195.

The preponderance of the evidence indicates that the board's IEP was reasonably calculated to allow T.B. to receive educational benefits at the board's high school because the IEP proposed the same type of instruction that T.B. received at Trinity Pawling. T.B.'s record at Trinity Pawling showed that T.B. made significant progress with that type of instruction, namely, extra time on tests and individualized assignments. T.B.'s record at Trinity Pawling is consistent with the board's finding that T.B.'s test scores were in the average range and that T.B. was consequently ineligible for special education. The hearing officer properly concluded that the board had satisfied its obligation to

**T.B. and that the parents were not entitled to reimbursement for T.B.'s private schooling.**

**The board's motion for judgment on the administrative record [Doc. #25] is GRANTED. The parents' motion for judgment on the administrative record [Doc. #34] is DENIED. The Clerk is directed to CLOSE this case.**

**IT IS SO ORDERED.**

**/s/**
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 20, 2008.**